UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**ROBERT OWEN,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　**CASE NO. 3:21cv906-MCR-HTC**

**SHERIFF OF OKALOOSA**
**COUNTY, FL, and**
**DANIEL WILLIAMS,**

    **Defendants.**
_____/

# ORDER

Plaintiff Robert Owen filed this civil rights suit pursuant to 42 U.S.C. § 1983, raising constitutional and state law claims against Deputy Daniel Williams, in his individual capacity, and the Sheriff of Okaloosa County, Florida, in his official capacity.[1]  Pending is the Defendants' Motion for Summary Judgment, ECF No. 17. Having fully reviewed the record and the arguments of the parties, the Court finds that the motion is due to be denied.

---

[1] This suit was originally filed in state court, and Defendants timely removed the case to federal court based on federal question jurisdiction, *see* 28 U.S.C. §§ 1331, 1343, 1441, 1443.

I.  **Background**[2]

On September 16, 2018, Plaintiff Robert Owen drove his pickup truck to a Tom Thumb Gas Station in Fort Walton Beach, Florida accompanied by his friend, Justin Wilson. Owen parked at the air pump to fill his tires, and Wilson remained in the vehicle. Deputy Williams arrived and parked behind Owen; he was responding to a citizen report of an intoxicated driver seen swerving on the road and driving a vehicle matching the description of Owen's truck. The body camera video shows that Williams approached Owen, introduced himself, and asked if everything was alright. Owen answered that he needed to fill his back tire with air, and he went around to the other side of the truck with the air hose to do so.[3] Williams started to explain why he was approaching them, saying, "We got a call, a couple of people—" but he never finished explaining because Owen said something that cannot be clearly heard on the video camera, and the passenger, Wilson, stepped out of the truck. Williams immediately turned to Wilson and ordered him to get back into the vehicle several times, and Wilson complied. During this time, Owen is heard talking indistinctly in the background, and Deputy Williams yelled, either at Owen or

---

[2] For the limited purposes of this summary judgment proceeding, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).

[3] Owen testified by deposition that he pulled into the gas station because of a flat tire, which had caused his truck to "veer[] off to the side a little bit." ECF No. 16–4 at 26–27.

Wilson, to "Shut your mouth!" ECF No. 16-2 (Video Exhibit 2). As Wilson retreated into the truck, Owen continued to protest verbally, stating Williams had no right or reason to talk to him that way, that he was not resisting, and that the deputy was violating his rights, and Williams immediately began to handcuff Owen.[4] Wilson then again began to get out of the truck, with his hands up, verbally protesting that he and Owen had done nothing wrong, and yelling "help, help" "don't shoot" and "why are you tasing him?"[5] In his report, Williams stated that Owen "tensed up his body and pulled his arms away" during the handcuffing. ECF No. 16-1 at 4.

After securing Owen in handcuffs, Williams then attempted to handcuff Wilson, who pulled away and spoke in a threatening manner as tensions escalated. Wilson raised his hands but did not immediately comply with Williams's command to get on the ground, and consequently, Williams pepper sprayed Wilson in the face while repeatedly yelling at him to get on the ground, and he appears to spray toward Owen one or two times. Wilson complied and was handcuffed while seated on the parking lot pavement, while Owen moved away. Williams can be heard saying, "get back over here," while looking toward Owen, and Williams also appears to order Owen (already handcuffed) to "get down."

---

[4] In his offense report, Williams stated that "due to the smell of marijuana emitting from the vehicle and officer safety, both men were detained." ECF No. 16-1.

[5] This was not true. Williams did not use a gun or deploy a taser.

CASE NO. 3:21cv906-MCR-HTC

The video then shows Owen handcuffed and on one knee by the air hose pump at the other end of the truck from Williams, yelling that his friend needed water due to the pepper spray. Deputy Williams, standing near Wilson at the back of the truck until a backup officer arrived, yelled to Owens, "get over here." Owen refused but remained kneeling, still handcuffed.[6] As backup officers began to arrive, Deputy Williams walked to Owen, helped him to his feet, and led him to his patrol vehicle. When Owen turned slightly to say, "is that body camera on?" Williams pushed him violently onto the hood of the patrol car. The rest happened in very quick succession. Owen testified that he was slammed onto the hood of the patrol vehicle, and when he briefly turned to look at Williams, Williams spun him around violently and slammed him to the ground, with Williams on top of him. The video shows Owen shocked and bloodied on the pavement, asking "why are you doing this to me?" According to Deputy Williams's reports, Owen had started to turn around and pull away, resisting his "efforts to double lock his handcuffs," so Williams "assisted" him to the ground,[7] ECF No. 16-1 at 2-4, or they both fell to the ground, ECF No.

---

[6] According to his affidavit, Owen was afraid of being pepper sprayed if he came closer.

[7] The defense brief states as undisputed fact that Williams was only able to handcuff one of Owen's hands, but this occurred very early when Owen was being handcuffed, not when Owen was taken to the ground. The video objectively and clearly shows that Williams had both of Owen's hands in cuffs before Wilson was pepper sprayed; Williams even stated that he had one detained before turning to Wilson. The video also clearly shows Owen with both hands cuffed behind his back as he was kneeling and also when he was "taken to the ground" near the deputy's patrol car.

21-24. Deputy Michael Watts responded after Wilson was on the ground, and he observed the incident. According to Watts, Owen tried to pull away, so Williams "performed a take down." ECF No. 16-1 at 4. Deputy Williams is heard on the video telling Corporal Kuntz, who arrived after the incident, that Owen had a "serious head injury from fighting me just now." In his sworn affidavit, Owen states that he did not fight or pull away. The body camera recording does not clearly contradict this statement because the incident occurred so quickly, but the recording does show that Owen was handcuffed at the time he was "assisted" to the ground face first and thus was unable to block his fall.

Emergency medical services arrived, and Owen was transported by ambulance to the Fort Walton Beach Medical Center where he underwent a CT scan and was diagnosed with a large right-side hematoma extending from his forehead over the face with radiopaque foreign bodies, and his face required sutures. During a search of the vehicle, deputies found an open beer can and a small amount of marijuana in the glove compartment.[8] Owen was arrested on a charge of resisting arrest without violence, in violation of Fla. Stat. § 843.02, and taken to the Okaloosa

---

[8] Williams's report stated that he saw an open beer can through the window and smelled marijuana as he approached the vehicle. There was no charge based on a possession of marijuana or drinking while operating a motor vehicle.

County Jail, where he stayed until October 22, 2018, when the State Attorney's Office dropped the charge.[9]

Owen filed this suit claiming that Deputy Williams, who was at all times acting within the scope of his employment, violated his constitutional and state law rights. Specifically, he asserts Fourth Amendment claims against Williams individually for unlawful seizure/false arrest, the excessive use of force, and malicious prosecution (Counts I, II, and III), and a state law malicious prosecution claim (Count VII). Based on Williams's conduct during this incident, Owen asserts state law claims against the Sheriff in his official capacity for assault, battery, and false arrest (Counts IV, V, and VI). The Defendants move for summary judgment on qualified immunity grounds. They also argue that the state law claims are unsupported.

## II.   Discussion

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the

---

[9] Owen had been out on bond for a previous charge of possession of drug paraphernalia and had a warrant for failure to appear when he was arrested for this incident. The warrant was not stated as a reason for Williams's initial investigation and detention of Owen. Owen pled guilty to those charges and received a sentence of time served, and in exchange, the instant charge for resisting without violence was dismissed.

CASE NO. 3:21cv906-MCR-HTC

outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004); *see also see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). A dispute of fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *See Celotex*, 477 U.S. at 323. Then the burden shifts to the nonmoving party to demonstrate that a material question of fact exists. *Id.* at 324. To do so, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal marks omitted); *see also* Fed. R. Civ. P. 56(c). This requires more than "speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 249-50). Also, the Court does not make credibility determinations or weigh the evidence on summary judgment but instead views the evidence and all justifiable inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255; *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (also stating courts "resolve all reasonable doubts

about the facts in favor of the non-movant" (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007)).  However, the nonmoving party's version of events is not credited if it is directly contradicted by an objective video recording of the incident.  *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

### A. Individual Claims against Williams

Williams asserts he is entitled to qualified immunity.  An officer may be individually liable for damages under 42 U.S.C. § 1983 on proof that the officer was acting under color of state law and deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  Qualified immunity shields officers from individual liability, however, when acting in their discretionary authority, "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Properly applied, this standard protects "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) ("Indeed, it is inevitable that law enforcement officials will in some cases reasonably but

mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable.").

The officer "bears the initial burden to prove that he acted within his discretionary authority," *Williams*, 965 F.3d at 1156, which requires a showing that the officer's actions were undertaken in the performance of official duties and within the scope of the officer's authority, *Habert Int'l., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (framing the question as "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties"). If so, the burden shifts to the plaintiff to overcome qualified immunity by establishing that the officer's conduct violated a constitutional right that was clearly established at the time. *Williams*, 965 F.3d at 1156; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001). The law is clearly established if there is a "materially similar case" from the Supreme Court, the Eleventh Circuit, or the highest state court, finding the conduct unlawful; if "a broader, clearly established principle" should control the situation; or if, in the absence of caselaw, "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official." *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1343 (11th Cir. 2020) (internal quotations omitted). That is, the law at the time of the officer's conduct must have been "sufficiently clear that every reasonable official

would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." (internal citation omitted)).  Finally, determining whether an officer is entitled to qualified immunity is a question of law; however, at the summary judgment stage, if "the evidence construed in the light most favorable to the plaintiff shows that there are facts inconsistent with granting qualified immunity, then the case and the qualified immunity defense proceed to trial."  *Baxter v. Roberts*, 54 F.4th 1241, 1256 (11th Cir. 2022) (quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)).

It is undisputed that Williams was acting within his discretionary authority, and therefore the burden is on Owen to show a genuine issue of material fact as to whether Williams violated a Fourth Amendment right that was clearly established.

1. Unreasonable Seizure/False Arrest

The Fourth Amendment protects citizens from unreasonable seizures.  U.S. Const. amend. IV.  Under the Fourth Amendment, brief investigatory stops do not rise to an unreasonable seizure when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  Also, an

officer may handcuff a suspect during an investigatory detention without necessarily converting the detention into a premature arrest and unlawful seizure if, based on the totality of the circumstances, it is necessary for officer protection.  *See United States v. Acosta*, 363 F.3d 1141, 1147 (11th Cir. 2004); *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989).  "The Supreme Court has stated that officers may take reasonable steps to ensure their safety so long as they possess 'an articulable and objectively reasonable belief that the suspect is potentially dangerous.'" *Acosta*, 363 F.3d at 1146 (quoting *Michigan v. Long*, 463 U.S. 1032, 1051 (1983)).

An arrest without a warrant "is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Wesby*, 138 S. Ct. at 586.  Probable cause to arrest exists when the circumstances, "viewed from the perspective of a reasonable officer, establish a probability or substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 898–99 (11th Cir. 2022) (quoting *Wesby*, 138 S. Ct. at 586 and noting that probable cause is "not a high bar"). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Baxter v. Roberts*, 54 F.4th 1241, 1265 (11th Cir. 2022) (quoting A*twater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).

Florida law makes it a misdemeanor crime to resist an officer in the lawful execution of any legal duty.  Fla. Stat. § 843.02.  This requires proof that "(1) the

officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." *S.G.K. v. State*, 657 So. 2d 1246, 1247 (Fla. 1st DCA 1995). Words alone will result in obstruction only in circumstances where the officer was serving process, legally detaining a person, or asking for assistance. *Jay v. State*, 731 So. 2d 774, 775 (Fla. 4th DCA 1999) (finding the words, "don't get into the car, he's a cop," did not constitute obstruction where the officer was soliciting women for a crime, but no crime had actually occurred, and therefore the speaker was entitled to resist an unlawful attempt to arrest him for obstruction).

Owen argues that Williams did not say he was investigating any purported drunk driving incident and contends he did not resist any of Williams's commands; he insists Williams unreasonably detained and arrested him without probable cause. Williams stated in his offense report that the smell of marijuana and "officer safety" justified the use of handcuffs, and he relies on the video to show that Owen did not submit to handcuffing or comply with his commands. The Court finds that the video inconclusive. Although Williams had a reasonable suspicion to investigate based on the citizen complaint of a possible drunk driver operating a truck matching the description of Owen's truck, it is unclear from the video whether Williams had reasonable safety concerns to justify immediately handcuffing Owen. Williams did not identify any particular conduct that presented a direct safety threat, and none is

apparent on the video *before* Owen was handcuffed. Owen was attempting to fill his tire with air, Wilson had retreated into the truck when commanded to do so, and the crime suspected was drunk driving, or possibly possession of marijuana, which Williams stated he smelled. Although Owen was asking questions and commenting quite persistently, he was not threatening (given what can be heard on the video) or fighting, and at no point is Williams heard informing Owen of the reason for the investigation or asking whether he had been drinking or smoking marijuana. Owens's inquiry into why he was being detained and handcuffed "does not rise to the level of obstruction required to arrest someone under Section 843.02," particularly when the officer did not respond. *Ruizdelatorre v. City of Miami Beach*, No. 06-21183-CIV, 2007 WL 9702359, at *10 (S.D. Fla. June 26, 2007) (citing *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006)). No lawful command is heard on the recording other than "shut your mouth," which does not alone provide a basis for detention or arrest.[10] But, not everything being said on the recording can be distinctly heard, and Williams's police reports conflict with Owens's testimony.

---

[10] The Eleventh Circuit commented in *Davis* that "with very limited exceptions," Florida courts require physical conduct to accompany offensive words in order to support a conviction under § 843.02. 451 F.3d at 765. Here, the situation became threatening *after* Williams decided to handcuff Owen—based on the conduct of his passenger, Wilson. When Williams was attempting to handcuff Owen, Wilson came out of the truck with his hands up, after being commanded to stay inside, yelling "help help" and "why are you tasing him?" which was not true. Williams secured Owen in handcuffs and turned to handcuff Wilson, who pulled away and used threatening words.

CASE NO. 3:21cv906-MCR-HTC

The Court thus concludes that determining whether the circumstances justified a reasonable concern for officer safety, and in turn justified an immediate investigatory detention using handcuffs, will require a jury to draw inferences and weigh credibility, which the undersigned cannot do.

2. Excessive Force

When a claim of excessive force arises out of an arrest, determining "whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314–15 (11th Cir. 2017); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (the reasonableness of a seizure "depends not only on *when* it is made, but also on *how* it is carried out"). This standard requires courts to ask "whether the officer's conduct [wa]s objectively reasonable in light of the facts confronting the officer." *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1338–39 (11th Cir. 2020) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. To determine whether an officer is entitled to qualified immunity in this context, "the focus should be on whether the law on the date of the excessive conduct in question gave the implicated officials fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Stephens*, 852 F.3d at 1316 (internal quotations omitted,

alteration in original). It was well-settled at the time of this incident that an officer can use force as necessary to restrain a suspect or effectuate an arrest but cannot use gratuitous or excessive force on a handcuffed suspect who is not resisting. *See Richmond v. Badia*, 47 F.4th 1172, 1184 (11th Cir. 2022) (broad, clearly established principle prohibits the use of "gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands"); *see also Lee,* 284 F.3d at 1198 (denying qualified immunity to officer who slammed compliant suspect's head onto car after suspect had been handcuffed.); *Slicker v. Jackson,* 215 F.3d 1225, 1227 (11th Cir. 2000) (denying qualified immunity to officer who slammed arrestee's head against ground after arrestee had been secured and was not resisting).

Owen asserts that while he was handcuffed and compliant, merely asking questions about why this was happening or whether the body camera was on, Williams slammed him onto the hood of the patrol vehicle and then face first onto the pavement. According to the arrest reports, Williams either "assisted" Owen to the ground or both fell as Williams attempted to gain control because Owen had pulled away from him. Owen denies that he pulled away and insists he only turned to speak and was violently swung to the ground, face first, with no ability to brace his fall because he was handcuffed. The facts must be viewed in the light most favorable to Owen at this stage, and, because the video does not provide a clear-cut answer, all reasonable inferences are viewed in Owen's favor. A question of fact

exists as to whether Owen was resisting and consequently, whether the force resulted from the deputy's attempt to gain control or simply a gratuitous use of force on a restrained suspect. Williams therefore is not entitled to qualified immunity at this stage, and the issue will go forward to trial.

### 3. Malicious Prosecution

A Fourth Amendment malicious prosecution claim requires proof of an unreasonable seizure without probable cause plus "the elements of the common law tort of malicious prosecution," which require proof that "the officers 'instituted or continued' a criminal prosecution against [the plaintiff], 'with malice and without probable cause,' that terminated in his favor and caused damage to him."[11] *Williams*, 965 F.3d at 1157 (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019)). In other words, malicious prosecution occurs where the legal process has gone

---

[11] *See also Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (articulating six elements necessary to a malicious prosecution claim under Florida law: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding."). While a malicious prosecution claim under the Fourth Amendment is guided by state common law, its elements are "ultimately are controlled by federal law." *Williams*, 965 F.3d at 1157 (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010)); *see also Laskar v. Hurd*, 972 F.3d 1278, 1295 (11th Cir. 2020) (holding, contrary to Florida common law, that for a § 1983 claim, "the favorable-termination element of malicious prosecution is not limited to terminations that affirmatively support the plaintiff's innocence" but only that the proceedings "end in a manner not inconsistent with his innocence on at least one charge that authorized his confinement").

forward without satisfying the Fourth Amendment's probable-cause requirement, such as where a judge finds probable cause based solely on an officer's false statement. *Id.* at 1158. "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004).

In this case, the record shows that the criminal case was opened in state court on September 16, 2018, based on the police report, which Owen disputes as false; Owen pled not guilty to the charge on October 9, 2018, and remained in custody; and the charge was *nolle prossed* (terminated in his favor) on October 22, 2018.[12] ECF No. 16–12 at 5. Thus, the same question of fact on the false arrest/unlawful seizure claim also precludes qualified immunity on the Fourth Amendment malicious prosecution claim and presents a question of fact as to malice[13] and

---

[12] Defendants argues that the record shows this charge was actually dismissed by reason of Owen's plea to the prior charges against him and thus does not establish a bona fide termination of the proceeding in his favor, which must under Florida law indicate innocence and the suit's lack of merit. *See, e.g., Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1356 (Fla. 1994); *Doss v. Bank of Am. N.A.*, 857 So. 2d 991, 994–95 (Fla. 5th DCA). Owen argues there is a question of fact because the Florida Supreme Court also has noted that bargaining or negotiating for the termination of litigation, "in and of itself, does not always negate the bona fide nature of the termination." *Mancusi*, 632 So. 2d at 1356. Owen contends the transcript of the proceeding terminating the case against him could be understood by a jury as merely the settlement of a claim that the prosecutor agreed had no merit. The Court agrees.

[13] Under Florida law, "legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others." *Alamo Rent–A–Car, Inc. v. Mancusi*, 632 So.2d 1352, 1357 (Fla.1994); *see also Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002).

probable cause on the common law claim. *See Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) (where the evidence is in dispute, "the existence or non-existence of malice and want of probable cause are questions of fact for the jury" (quoting *Kingsland*, 382 F.3d at 1235)). Williams is therefore not entitled to qualified immunity or summary judgment on the malicious prosecution claims.

  B.  **Official Capacity Claims against the Sheriff**

Owen brought claims of assault, battery, and false arrest/imprisonment against the Sheriff in his official capacity based on Williams's conduct. Florida Statute § 768.28 holds a Sheriff liable for the torts of an officer committed in the course and scope of his employment, unless that conduct "was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). This applies to "all torts, negligent ones and intentional ones alike" committed within the scope of employment that do not inherently or necessarily involve malice or willful and wanton conduct. *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987) (government is not immunized from intentional torts of excessive force and false arrest); *see also Gregory v. Miami-Dade Cnty., Fla.* 719 F. App'x 859, 873 (11th Cir. 2017) (same as to battery).

The assault claim is based on Williams intentionally threatening bodily harm to Owen by pepper-spraying Wilson and then approaching Owen, who was handcuffed and on his knees. The battery claim is based on Williams's conduct of applying excessive force. And the false arrest/imprisonment claim is based on Owen's contention that Williams detained and arrested him without probable cause. The Sheriff argues he is entitled to summary judgment because the undisputed facts establish that there was no excessive force, no threat of assault by pepper spray, and that the arrest was supported by probable cause. Because of the questions of fact previously identified, summary judgment is not appropriate.[14]

Accordingly, Defendants' Motion for Summary Judgment, ECF No. 17, is **DENIED**.

**DONE and ORDERED** on this 30th day of March 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[14] In addition to the facts previously identified as unclear on the video, there appear to be one or two instances during the pepper spray incident when Williams sprays in the direction of Owen. Thus, the Court cannot say that the undisputed record does not support the assault claim.